# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>AP ORANGEVALE, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 23-10687 (CTG)<br><br>Objection Deadline: June 28, 2023 at 4:00 p.m.<br>Hearing Date: July 19, 2023 at 10:00 a.m. |

## DEBTOR'S MOTION TO ASSUME CERTAIN UNEXPIRED LEASES

AP Orangevale, LLC (the "Debtor"), by and through its proposed undersigned counsel, hereby moves this Court (the "Motion") for entry of an order, pursuant to Sections 105 and 365(a) of chapter 11 of title 11 of the United States Code 11 U.S.C. 101 *et seq*. (the "Bankruptcy Code"), approving the Debtor's assumption of certain unexpired leases described below. In support of this Motion, the Debtor states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. § 1334, which is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 365 and 105 and Rules 2002, 6006 and 9017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## PROCEDURAL BACKGROUND

3. On May 29, 2023 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code in the United States Bankruptcy Court

for the District of Delaware.

4. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this Motion, no trustee, examiner or committee has been appointed in this chapter 11 case.

## FACTUAL BACKGROUND

5. On or around May 23, 1986, Vernon A. Cable ("Original Landlord") and Payless Drug Stores Northwest, Inc. ("Original Tenant") entered into a ground lease ("Ground Lease") for certain unimproved real property located in Sacramento County commonly known as 8861 Greenback Lane, Orangevale, CA (the "Premises").

6. All parties agree that the term ("Term") of the Ground Lease, exclusive of extension options therein provided for (each, an "Option"), would end in 2012. The Term was subject to eight five-year extension options exercisable by then tenant. An exercise of all eight five-year Options prolongs the Term by a maximum of forty years, to a date in 2052. Any or all of the Options were exercisable upon written notice to the Landlord given at least sixty days prior to the expiration of the Term, as in effect at the time any exercise notice was provided.

7. The Ground Lease further allowed the Original Tenant to assign the lease or sublet the Premises but did not relieve Original Tenant from any obligations under the Ground Lease should any such assignment or subletting occur. An assignment or sublease would include transfer of the right to exercise all or certain Options to the assignee or sublessee.

8. The Ground Lease provides for the quiet enjoyment of the Premises by the Original Tenant and its successors and undertenants and prohibits the Original Landlord from interfering with the peaceful and quiet occupation and enjoyment of the same by hindrance, ejection or molestation.

9.      Each of the obligations of the Original Landlord under the Ground Lease is binding on all successors and assigns of the of the Original Landlord and shall be construed as covenants running with the land.

10.     Thrifty Payless, Inc. ("Thrifty Payless") is the successor to the Original Tenant following the consummation of a series of transactions on or around September 15, 1995. As part of such transactions, Thrifty Payless, assumed or became primarily liable for all of the obligations of the Original Tenant under the Ground Lease.

11.     On December 10, 1998 (one day prior to the below-described Sale-Leaseback transaction), Thrifty Payless, as the successor in interest to the Original Tenant, notified the Original Landlord of its exercise of all eight of the Options under the Ground Lease, thereby prolonging the Term by the maximum allowable period of forty years beyond the date the Term would otherwise have come to an end.

12.     Among other reasons, exercise of all the Options was done by Thrifty Payless to satisfy certain customary and routine requirements of lenders, financial insurers and rating agencies that participate in commercial sale-leaseback transactions. Such a transaction (the "Sale-Leaseback") was in fact concluded by Thrifty Payless just one day after the exercise of the Options. The Options were exercised by Thrifty Payless in anticipation of and in reliance on the conclusion of the Sale-Leaseback nearly immediately thereafter.[1]

13.     As part of the Sale-Leaseback documentation that was recorded in the applicable land records of Sacramento County, an assignment and covenant by RA3 as tenant under the Ground Lease and as the borrower of the $4,000,000+/- debt thereunder irrevocably and currently

---

[1] Although some of the Sale-Leaseback transaction documents are dated December 7, 1998 or December 8, 1998, they were held in escrow pending the closing of the transaction on December 11, 1998.

assigned to RA3's lender all rights to exercise any options, amend or to otherwise deal with RA3's interest in the Ground Lease in any way, thereby divesting tenant RA3 of any and all authority to act in any manner that could affect the term of the Ground Lease, or to otherwise exercise any material right under the Ground Lease. These provisions took effect on December 11, 1998, immediately upon the effectiveness of the Sale-Leaseback and removed from RA3, under the Ground Lease, any and all authority to exercise ground lease options or un-exercise such options or to amend the Ground Lease or otherwise deal with RA3's interest thereunder in any way without the involvement and consent of RA3's lender. A true and correct copy of the relevant mortgage is attached hereto as Exhibit 1.

14. These restrictions were a matter of public record at the time that the Current Landlord acquired its interest in the Ground Lease and the Current Landlord knew or is charged with knowledge thereof. Accordingly, Current Landlord's reliance on the letter dated December 11, 1998 and signed by RA3 representative Daniel Mannix, is without any legal force or effect to the extent it purported to elect or un-elect previously elected option terms under the Ground Lease. Such notice was effective only to confirm that the Sale-Leaseback occurred on December 11, 1998, the day after all eight option terms were effectively elected by Thrifty Payless in its notice dated and transmitted on December 10, 1998.

15. On information and belief, the foregoing matters were known to and understood by Current Landlord, a sophisticated real estate investor that performed extensive due diligence and had copies of all the applicable agreements **before** it acquired its interest in the Ground Lease. Accordingly, it would appear that Current Landlord's current position and its efforts to evict Debtor from the Premises is in bad faith and frivolous.

16. The Sale-Leaseback could never have been concluded and would not have been participated in by many law firms, appraisers, insurers, lenders, rating agencies and underwriters if the Options had not been properly exercised prior to the closing of the Sale-Leaseback and the funding of more than $4.396 million in respect thereof. In fact, the exercise of the Options was the very action that created the real estate equity and value to support the $4.396 million of loans and numerous other substantial obligations that were funded in reliance on the elongated term of the Ground Lease by the many deal participants to the Sale Leaseback.

17. The first step in the Sale-Leaseback to occur *after the Options were exercised by Thrifty Payless* was a transfer of the Tenant's interest in the extended Ground Lease to RA3 Orangevale, LLC ("RA3"), a newly formed entity that would be the borrower of a loan of $4.396 funded by PW Real Estate Investments, Inc. Immediately thereafter, RA3 entered into a sublease with Thrifty Payless, thereby creating a "sandwich" lease structure with RA3 as the new "tenant" under the Ground Lease and as the new sublandlord to Thrifty Payless, which remained as the physical occupant of the Premises but which now derived its occupancy rights under a new "Tenant Lease." The contemplated transaction was closed, and settled, and the documents evidencing the new structure and financing were delivered and became effective, on December 11, 1998, the day after the Options were exercised by Thrifty Payless.

18. Following the close of the Sale-Leaseback, RA3 sent a letter to the Original Landlord, informing the Original Landlord that the sale-leaseback transaction between Thrifty Payless and RA3 had closed on December 11, 1998. Current Landlord does not deny having received this communication.

19. In an unrelated investment transaction occurring a number of months after the closing of the Sale-Leaseback, RA3 sold its interest in all the transaction documents, including the

Ground Lease, to GCC-RA Orangevale, LLC ("GCC-RA"). GCC-RA so acquired all of the rights of the Original Tenant under the Ground Lease and of the sublessor under the Tenant Lease.

20. On or about March 11, 2022, GCC-RA assigned its interest in the Ground Lease to the Debtor. The Debtor thereby became the beneficiary of all the obligations of the Current Landlord under the Ground Lease and of the Current Tenant (defined below) as the sublessee under the Tenant Lease.

21. In another transaction unrelated to the Sale-Leaseback that was concluded some months after the closing of the Sale-Leaseback, Longs Drug Stores California, LLC ("Longs") succeeded to the interests of Thrifty Payless in the Tenant Lease, and became the occupant of the Premises with an obligation to pay rent. On or about 2008, Longs was acquired by CVS Caremark Corp. (the "Current Tenant").

22. Cable Park Property Owner, LLC ("Current Landlord") is a successor landlord to Original Landlord and assumed all of the obligations of the Original Landlord under the Ground Lease.

23. At no time prior to 2022 had Original Landlord or Current Landlord ever asserted that the Thrifty Payless exercise of the Options on December 10, 1998 to extend the term of the Ground Lease was defective and without authority. Yet, on or about June 3, 2022, and notwithstanding the exercise of all of the Options and the Ground Lease Term not expiring until 2052, the Current Landlord erroneously informed the Debtor that the Ground Lease would terminate on July 23, 2022, and demanded that the Debtor surrender the Premises by that date. Current Tenant was also a recipient of the erroneous demand by Current Landlord that Debtor surrender the Premises. The Debtor refuses to surrender the Premises, disputes the Current Landlord's contentions, and maintains the Term is still in full force and effect.

24.     On or about August 15, 2022, Current Landlord alleged, for the first time, that Thrifty Payless's exercise of the Options on December 10, 1998 to extend the term of the Ground Lease was defective and without authority.  This fantastic claim is based solely and wrongly on the fact that one or more of the transaction documents relating to the Sale-Leaseback, and that were delivered at the closing thereof on December 11, 1998, bore a date *before* December 11, 1998. According to Current Landlord, this means that the Sale Leaseback actually occurred before the Thrifty Payless Option exercise on December 10th. It follows, according to Current Landlord, that the Option exercise notice—which is not denied to have been received by Original Landlord on December 10th—was signed by Thrifty Payless three days after it had already sold its interest in the Ground Lease to RA3 on December 7th.  And, since RA3 did not sign the exercise notice, it was void and ineffective because Thrifty Payless was not the "Tenant" anymore on December 10th.[2]

25.     The Debtor has not surrendered the Premises and continues to have the right to occupy the Premises subject to the Ground Lease, the Term of which is still in full force and effect, valid, and otherwise lawful, legal, and binding.  As a result of the actions of Current Landlord, Current Tenant has abandoned the Premises but remains obligated under the Tenant Lease with Debtor.

---

[2] Current Landlord is a professional realty investor with experienced counsel.  It knows or should know that the applicable documents were not delivered and effective until December 11th, the day after the Options were exercised.  It also knows that none of the major deal participants in the Sale-Leaseback would have closed if the exercise of the Options was somehow ineffective as of December 11th.  Yet now, more than two decades later, and following its own diligence process before acquiring the Ground Lease in 2015, wherein the actual facts of the closing of the Sale-Leaseback were clearly discernable and known to or should have been known to Current Landlord, Current Landlord seeks to exploit these facts to unfairly deprive the Debtor of its valuable leasehold interest.

## RELIEF REQUESTED

26. By this Motion, the Debtor respectfully requests that the Court approve assumption of the Ground Lease and the Tenant Lease and related relief.

## BASIS FOR RELIEF

27. Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. §365(a). By enacting § 365(a) of the Bankruptcy Code, Congress intended to allow a debtor to assume those leases/contracts that benefit the estate, and to reject those that are of no value or are burdensome to the estate. *See Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001); *In re Whitcomb & Keller Mortgage Co., Inc.,* 715 F.2d 375, 379 (7th Cir. 1983); *In re Sandman Assocs., LLC*, 251 B.R. 473, 481 (W.D. Va. 2000) (noting that "[t]he authority granted by section 365 allows the trustee or debtor in possession to pick and choose among contracts, assuming those that are favorable and rejecting those that are not").

28. It is well established in the Third Circuit, and in other jurisdictions, that decisions to assume or reject executory contracts or unexpired leases are matters within the "business judgment" of the debtor. *See Sharon Steel Corp. v. Nat'l Fuel Gas Dist. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989). See also *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *In re G Survivor Corp.*, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) (noting that "[i]n determining whether a debtor may be permitted to reject an executory contract, courts usually apply the business judgment test).

29. Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered. Accordingly, courts approve the assumption or rejection of an executory contract or unexpired lease unless evidence is presented that the debtor's decision to assume or reject was "so manifestly unreasonable that it could not be based on sound business

judgment, but only on bad faith, or whim or caprice." *In re Richmond Metal Finishers, Inc.*, 756 F.2d 1043, 1047 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057 (1986). Indeed, to impose more exacting scrutiny would slow a debtor's reorganization, thereby increasing its cost and undermining the "Bankruptcy Code's provisions for private control" of the estate's administration. *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

30. Pursuant to Section 365(b) of the Bankruptcy Code, a debtor cannot assume a contract or lease until all defaults are cured under such contract or lease. The Debtor has determined that it does not owe any amounts to either the Current Landlord under the Ground Lease or the Current Tenant under the Tenant Lease. As such, the Debtor can assume the Ground Lease and the Tenant Lease without having to cure such leases.

31. The Debtor submits that its decision to assume the Ground Lease and the Tenant Lease is supported by its sound business judgment. First, the alternative – rejection of the Lease – would have disastrous consequences for the Debtor and its creditors, including the lenders who loaned money in reliance on the Term of the Lease. The Debtor's decision to assume the Ground Lease and the Tenant Lease is reasonable on its face as assumption of these leases will allow the Debtor to retain and maximize the value of its only significant assets, eliminate risk of default, and minimize claims against the Debtor's estate. Neither of the leases described herein has expired or been terminated. Accordingly, all of the Debtor's creditors will benefit from the decision to assume the Ground Lease and the Tenant Lease and assumption is supported by the Debtor's sound business judgment. Assumption of Ground Lease and the Tenant Lease will allow the Debtor to continue the operation of its business without disruption. The terms of each of the Ground Lease and the Tenant Lease are fair and will not result in a drain on the Debtor's estate.

32. If the Ground Lease and the Tenant Lease were rejected, the consequences would

be devastating to the Debtor. The Debtor would lose its valuable assets, and face damage claims from its lenders. The Current Tenant may have rejection damage claims pursuant to section 502 of the Bankruptcy Code or other claims in connection with such contracts or the rejection or termination of the rejected leases.

33. In light of the foregoing, the Debtor respectfully submits that its decision to assume the Ground Lease and the Tenant Lease is supported by its sound business judgment, and is in the best interests of its estate and creditors.

## **NOTICE**

34. No trustee, examiner, or creditors' committee has been appointed in the Debtor's chapter 11 case. Notice of this Motion has been given to (i) the United States Trustee for the District of Delaware, (ii) the creditors identified on the Debtor's list of twenty largest unsecured creditors, (iii) the Current Landlord, (iv) the Current Tenant, and (v) the Debtor's prepetition secured lender. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is required.

35. No prior motion for the relief sought herein has been made to this or to any other court.

**WHEREFORE,** the Debtor respectfully requests that this Court enter an order, substantially in the form submitted herewith, granting the relief requested herein and such other and further relief as this Court deems just and proper.

Dated: June 14, 2023  
Wilmington, Delaware

CROSS & SIMON, LLC

<u>*/s/ Kevin S. Mann*</u>
Christopher P. Simon (No. 3697)
Kevin S. Mann (No. 4576)
1105 North Market Street, Suite 901
Wilmington, Delaware 19801
Telephone: (302) 777-4200
csimon@crosslaw.com
kmann@crosslaw.com

*Proposed Counsel to the Debtor and Debtor in Possession*